**OKLAHOMA TAX COMMISSION,**
**Appellee,**

**v.**

**CITY VENDING OF MUSKOGEE,**
**INC., Appellant.**

No. 65602.

Supreme Court of Oklahoma.

July 14, 1992.

**98**

J. Lawrence Blankenship, Robert C. Jenkins, David Hudson, Stanley Johnston, Office of General Counsel, Oklahoma Tax Com'n, Oklahoma City, for appellee.

Jon Tom Staton, Muskogee, for appellant.

**PER CURIAM:**

■ Appellant, City Vending of Muskogee, Inc. (City Vending), was an Oklahoma based wholesaler of cigarettes licensed by appellee, the Oklahoma Tax Commission (OTC).[1] Wholesalers are required to purchase and affix tax stamps to cigarettes [2] with certain exceptions.[3] On May 31, 1985, after auditing City Vending, OTC mailed a proposed tax assessment to it for distribution and sale of unstamped cigarettes. OTC also sought to cancel and/or revoke City Vending's wholesale license for its failure to affix cigarette tax stamps.[4] City Vending protested the assessment and defended against revocation of its license on two grounds. It argued the sales at issue were made to Indian Tribes and the transactions were therefore exempt by virtue of the Indian Commerce Clause of the United States Constitution. U.S. CONST. art. 1, § 8, cl. 3.[5] City Vending also asserted OTC discriminatorily applied the cigarette tax laws against in-state wholesalers, while not seeking any assessment against out-of-state wholesalers who also sold cigarettes to Indian Tribes. Presently, only the first defense is involved.[6]

---

**1.** Cigarette wholesalers were and are required to be licensed. 68 O.S.1981, § 304, now 68 O.S. 1991, § 304. Although certain statutes involved in this case have been changed since the filing of the instant appeal and the proceedings occurring herein before the trial court and OTC, the statutory provisions covering the instant matter are those found in the 1981 Oklahoma Statutes. Accordingly, references in this opinion will be to the 1981 versions of pertinent statutes, unless otherwise specified.

**2.** 68 O.S.1991, § 305.

**3.** *See e.g.* 68 O.S.1991, § 310 (exemption for cigarettes sold in interstate commerce after filing of proper bond) and 68 O.S.1991, § 321 (exemption for cigarettes sold to veteran's hospitals and state operated domiciliary homes for veterans for sale to ex-service men or women and sales to United States). City Vending does not argue either of these statutory exemptions were intended to apply to the sales at issue in this case.

**4.** The relevant statute setting out the procedure to cancel a license granted by OTC for violation of the tax laws was 68 O.S.1981, § 212.

**5.** U.S. CONST. art. 1, § 8, cl. 3 provides: Congress shall have power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes".

**6.** The three issues and errors set forth in City Vending's petition in error and amendment to petition in error were as follows:

"1. Is the wholesale of cigarettes to an Indian Tribe exempt from state tax pursuant to the Commerce Clause?

2. Should the license have been revoked since City Vending has filed the case on the constitutional question, after paying the contested taxes, pursuant to 68 O.S. § 226?

3. Was the order of the Tax Commission void due to the finding of the Tax Commission that it did not have jurisdiction of the issue

The assessment and revocation matters were eventually combined, apparently by agreement of the parties, and were presented to an administrative law judge. After hearing(s) the judge issued Findings, Conclusions and Recommendations which recommended the protest be denied and the license canceled. OTC adopted the Findings, etc. of the administrative law judge as the Order of the Commission. No appeal

by City Vending was perfected to this Court as allowed by 68 O.S.1981, § 225 and the order was allowed to become final.[7]

Shortly after the order was issued OTC filed a proceeding in Muskogee County District Court to enjoin City Vending from continuing to sell cigarettes without a license. The instant appeal is from the trial judge's granting of the requested injunction.[8] City Vending claims the OTC

---

involved upon which taxes were assessed and the subject license revoked?"

Errors not presented by the petition in error will not be considered on appeal. *Kirschstein v. Haynes,* 788 P.2d 941, 955 (Okla.1990); *Martin v. Harrah Independent School District,* 543 P.2d 1370, 1376 (Okla.1976). In essence, the second defense raised by City Vending before OTC is based on an alleged reverse discrimination favoring interstate commerce and burdening intrastate transactions. We in no way view this second purported defense presented by the issues or errors set forth above. We further note in its initial brief of appellant City Vending also argued OTC should be estopped from any argument sales to Indian Tribes were not tax exempt. The assertion was based, in part, on a 1978 letter of an OTC official with the Sales and Use Tax Division of OTC to a Tribal Administrator of the Citizen Band Potawatomi Indians to the effect OTC recognized the tax exempt status for sales tax purposes of the Tribe's purchase of tangible personal property. City Vending says there should be no distinction between the sales tax and the cigarette excise tax involved here. City Vending also based its estoppel theory on OTC's alleged treatment of cigarette sales by out-of-state wholesalers to Indian Tribes as tax exempt and its treatment of the instant matter that the sales by City Vending, an in-state wholesaler, were not. We will not consider these arguments for the reason no estoppel argument was contained in the petition in error or the amendment to petition in error filed in this Court. *Id.*

7. 68 O.S.1981, § 225(f) [now 68 O.S.1991, § 225(g) ] provides an avenue to appeal directly to this Court any order, judgment, finding or ruling of OTC other than one assessing a tax. This provision clearly applies to a license revocation. Other subsections of § 225 also would have allowed an appeal directly to this Court from that part of the final order assessing the tax. City Vending appears to allude in its certiorari petition to a rationale for its failure to appeal under § 225, although it never even refers to § 225 in its petition for certiorari. It appears to say it did not appeal, or, at least, follow through with an appeal under § 225 to this Court, because OTC required a 3 million dollar bond to supersede the order of revocation. Section 225(f) allows a party to supersede the effect of an order, etc. of OTC by filing with

OTC a bond in an amount fixed by OTC. We, of course, cannot consider any argument attempted to be raised by City Vending in relation to this bond issue for the reason an appellate court, in reviewing a matter on appeal, must have a proper record before it to review any claimed errors. *Eckel v. Adair,* 698 P.2d 921, 924–925 (Okla.1984); *Holley v. Shepard,* 744 P.2d 945, 947 (Okla.1987). There is nothing in the record presented to us in this appeal that such a bond was required by OTC to supersede the license revocation during the pendency of a § 225 appeal. Furthermore, even if such a bond was required by OTC *to supersede the effect of the license revocation,* no such bond is required merely to appeal to this Court nor are we aware of any law which would prevent this Court from fashioning relief from an OTC requirement as to superseding the effect of the license revocation deemed inequitable or unnecessary, *if so requested by a party to an appeal.* However, in that no appeal was perfected under § 225 from the OTC order no such request was ever made by City Vending. Finally, we note *no* issue concerning some unlawful prevention of an appeal under § 225 is contained in the petition in error in this case and for this reason any such issue has been waived by City Vending and will not be considered by us. *Kirschstein v. Haynes, supra* note 6, at 955.

8. In addition to the Muskogee County District Court case, City Vending filed an action in Oklahoma County District Court in December 1985 pursuant to 68 O.S.1981, § 226, contesting the tax assessment and praying for a declaration of unconstitutionality of the tax assessment and a refund of the taxes paid. City Vending of Muskogee, Inc. v. Oklahoma Tax Commission, Case No. CJ–85–10772 (Okla. County Dist. Court). On application of OTC we assumed original jurisdiction in said case on March 17, 1986 and issued an order granting a writ of prohibition prohibiting any assigned judge from proceeding further in the case because of a failure to meet the 30 day time limitation imposed by § 226(b) as interpreted in *Ladd Petroleum Corp. v. Oklahoma Tax Commission,* 619 P.2d 602 (Okla.1980). Oklahoma Tax Commission v. The Honorable Joe Cannon, District Judge, Case No. 65,916 (Okla. S.Ct., unpublished order, March 17, 1986). City Vending does not challenge this

order revoking its license was void *ab initio*, or facially void, for lack of jurisdiction.[9] The Court of Appeals found the order was not void, that it could and should have been the subject of appeal to this Court under § 225 and because it was not it became final and impervious to collateral attack. Accordingly, the Court of Appeals affirmed the trial court's granting of a permanent injunction.

■ City Vending asserts the facial invalidity of the OTC order is contained in the following quotation from the administrative law judge's Findings, Conclusions and Recommendations: "[t]hat [OTC] is without jurisdiction to determine the constitutional questions presented and asserted by [City Vending]". It argues that because OTC was without authority to determine the constitutional defense(s) presented OTC was without jurisdiction to enter any order revoking its license with the constitutional defense left unresolved. We do not agree.

Assuming, without deciding, OTC was without authority to determine the constitutional defense(s) because it has no power to either rule a legislative enactment unconstitutional or because it likewise lacks authority to grant an exemption from an unambiguous legislative taxing scheme that does not provide for the claimed exemption,[10] this does not mean a decision either to uphold a proposed tax assessment or to revoke a license like that at issue here is facially void. In a related case, the United States Court of Appeals for the Tenth Circuit stated:

> On appeal, [City Vending] asserts the OTC determination upholding the first tax assessment was void because the OTC did not have jurisdiction to consider the constitutional claims. This argument is unpersuasive because the OTC did not address the constitutional claims contrary to its authority, but rather held it lacked authority to consider those claims.[11]

■ Although we are not bound by the Tenth Circuit's determination and we realize the situation before it was presented in the context of a bankruptcy proceeding where only the tax assessment part of the order was in issue, we find its determination on the voidness issue to be persuasive. The simple fact is that although OTC may not have been able to determine the constitutional defenses raised by City Vending before it *we* had the authority to consider those defenses on appeal and City Vending cannot now claim the order of OTC was void because it did not have authority to definitively determine the constitutional defenses.[12]

---

ruling in its petition for certiorari nor does it challenge therein the Court of Appeals' ruling in their opinion in this case that § 226 only provides an additional remedy as to a tax assessment, but does not provide an additional remedy or means of appeal as to a license revocation. Accordingly, these issues will not be considered by us as they have been waived by failure to present them in City Vending's petition for certiorari. *Ford v. Ford,* 766 P.2d 950, 952 n. 1 (Okla.1988).

9. A void judgment may be attacked at any time. *Hough v. Hough,* 772 P.2d 920, 921 (Okla.1989). However, for a judgment to be void it must appear on the face of the judgment roll or record the court rendering the judgment lacked jurisdiction over the parties, the subject matter or the jurisdictional power to render the particular judgment. *Id.* Furthermore, extrinsic evidence of the lack of jurisdiction is not permitted. *Id.*

10. We held in part in *Dow Jones & Co. v. Oklahoma Tax Commission,* 787 P.2d 843, 845 (Okla.1990), that as an administrative agency OTC was powerless to strike down a statute for constitutional repugnancy.

11. *City Vending of Muskogee, Inc. v. Oklahoma Tax Commission,* 898 F.2d 122, 125 (10th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990).

12. *See also Dash, Inc. v. Alcoholic Beverage Control Appeals Board,* 683 F.2d 1229 (9th Cir.1982). In *Dash* liquor licensees contended California's procedure for revoking liquor licenses denied licensees procedural due process guarantees of the Fourteenth Amendment to the United States Constitution. The licensees argued the process provided no meaningful opportunity to present constitutional defenses to license revocations. Licensees claimed that because article III, § 3.5 of the California Constitution prohibited administrative bodies from declaring statutes unconstitutional or refusing enforcement of statutes on the basis of claims such statutes are unconstitutional and that review of administrative decisions to revoke a liquor license were limited to

█ **101**

█ Normally our inquiry would end here. However, because City Vending claims all the sales it made were wholly exempt from state taxation by virtue of the Indian Commerce Clause and presumably that such fact ousted State authorities of all jurisdiction to tax any such sales, we feel compelled to answer the Commerce Clause question.

Although City Vending appears to admit in its submissions to this Court cigarettes it sold in this case to Indians and/or Indian Tribes for resale at the retail level by the tribes or tribally related smoke shops would only be tax exempt from the excise tax if made to members of the involved tribe it asserts its dealings are nonetheless completely tax exempt under the Indian Commerce Clause and State authorities *must* seek a remedy directly against a Tribe or the smoke shop retailer. We do not agree.

In *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, —— U.S. ——, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), the United States Supreme Court held that retail sales of cigarettes by tribal sellers to nontribal members were subject to Oklahoma tax. —— U.S. at ——, 111 S.Ct. at 911. However, in the same opinion the Supreme Court held a Tribe could not be sued by State tax authorities because Indian Tribes retain sovereign immunity from nonconsensual suit by the State. *Id.*, —— U.S. at ——, 111 S.Ct. at 909–910. The Supreme Court realized this latter ruling barred the State from pursuing the most efficient remedy to collect taxes on nonexempt sales, i.e. sales to nontribal members. It accordingly stated the following, "[a]nd under today's decision, States may of course collect the sales tax from cigarette wholesalers, either by seizing unstamped cigarettes off the reservation ... or by assessing wholesalers who supplied unstamped cigarettes to the tribal stores...." (citations omitted) *Id.*, —— U.S. at ——, 111 S.Ct. at 912. Accordingly, City Vending is wrong that the Indian Commerce Clause exempts all sales by a wholesaler to an Indian Tribe.

█ One may, however, argue that because the State only has authority to tax final retail sales to nontribal members and OTC made no distinction in this case between sales at the retail level ultimately made to tribal members and those made to nontribal members it had no authority to revoke the license. We do not believe any such argument assists City Vending in the present case. No record has been presented to us which would show to whom the ultimate retail sales were made by the involved Tribes or smoke shops City Vending wholesaled cigarettes. This record only shows City Vending sold to Indians and/or Indian Tribes at the wholesale level for resale within Oklahoma. Once this fact is established, which without some exemption would be a violation of our cigarette tax laws, it was City Vending's burden to show some valid exemption existed which would make its sales tax exempt. The instant

discretionary review before appellate courts, they were denied due process of law. The Ninth Circuit disagreed. It noted the California courts *did* have authority to consider the constitutional claims and that during the administrative hearings licensees were given the opportunity to present evidence relevant to all defenses raised, including their constitutional defenses. *Id.* at 1234. The Ninth Circuit further found that contrary to licensees' contention review in the California appellate courts was discretionary, review of the revocations in the appellate courts was as of right. *Id.* at 1235. Accordingly, the Ninth Circuit held the process received by the licensees satisfied the minimal procedural requirements of the Fourteenth Amendment Due Process Clause. *Id.* at 1235. City Vending did not raise as an issue or error in its petition in error or its amendment to petition in error filed in this appeal a challenge on due process grounds to the statutory process covering the revocation of a cigarette wholesaler's license. It did, however, allude to a purported lack of due process in its petition for certiorari as another basis for voidness of the OTC order. Like *any other issue* raised or attempted to be raised by City Vending in post-petition in error (or amendment thereto) submissions, whether based on due process or any other basis, such issues have been waived and will not be considered by us because issues or errors not raised in the petition in error will not be considered on appeal even if later contained in a brief or later submission of the appealing party. *See Martin v. Harrah Independent School District, supra* note 6 at 1376.

record does not show any such exemption.[13] Furthermore, in that only sales to tribal members would be exempt from the reach of Oklahoma's tax laws and the face of the record we have been provided does not explicitly show any retail sales to tribal members which would be exempt we cannot conclude OTC lacked jurisdiction to revoke City Vending's license nor that the trial court erred in permanently enjoining City Vending from continuing to wholesale cigarettes after its license was revoked.[14]

Accordingly, the opinion of the Court of Appeals is Vacated and the trial court is Affirmed.

HODGES, V.C.J., and LAVENDER, SIMMS, HARGRAVE and WATT, JJ., concur.

WILSON, J., concurs specially.

OPALA, C.J., concurs in judgment.

KAUGER and SUMMERS, JJ., dissent.

**13.** City Vending has argued in at least one submission to this Court there was no evidence in the record before OTC that the Tribes it sold cigarettes to resold the cigarettes at the retail level. It, thus, appears to argue without such evidence all of its sales would be tax exempt because the Tribes or its members may have *consumed* all the cigarettes or merely again sold the cigarettes at the wholesale level. Such argument(s) are simply not viable on the present record. The Findings, etc. of the administrative law judge, as adopted by OTC in its Order of the Commission contains the following statement of fact:

The facts at issue in the protest of City Vending of Muskogee, Inc. are not in dispute, being that [City Vending] has sold cigarettes to Indians and/Indian tribes for resale within the State of Oklahoma and therein failing to affix thereto cigarette excise tax stamps as required by the laws of the State of Oklahoma.

Findings, etc., pg. 3 at Original Record pg. 6.

We have been provided no transcript or other record of the administrative proceedings before OTC. In an appeal pursuant to § 225 such an administrative record could have been presented to us as prepared by OTC, as certified to by the Secretary of the Commission, upon request of City Vending. 68 O.S.1981, § 225(b). Apparently, neither City Vending nor OTC made any effort to provide the administrative record to the trial court in this case. Only the Findings, etc. of the administrative law judge and the Order of the Commission were attached to the petition of OTC for injunctive relief filed in the District Court of Muskogee County. Clearly, we

## ORDER

The petition for rehearing of Appellee, the Oklahoma Tax Commission is granted and this Court's opinion promulgated on April 23, 1991 and reported at 62 O.B.J. 1377 is withdrawn and replaced by the opinion filed this date.

DONE BY ORDER.

OPALA, Chief Justice, concurring in judgment.

The court affirms today the trial court's judgment which permanently enjoins the wholesaler, City Vending, from selling cigarettes within the State without a license. While I do not accede to the court's pronouncement, I concur *insofar as the court declares that the Oklahoma Tax Commission's [Commission] order*, which assessed a cigarette excise tax against the wholesaler and revoked its license, *is not facially void for want of subject matter*

view the above quote as indicating, at a minimum, that the cigarettes sold by City Vending were resold in Oklahoma and were not merely consumed by a Tribe or tribal members. The quote, however, does not explicitly say to whom the cigarettes were resold or that they were resold at the retail level. City Vending cannot now take advantage of this apparent uncertainty. The burden of proof to show an exemption from the tax laws was on City Vending. *Bert Smith Road Machinery Co., Inc. v. Oklahoma Tax Commission*, 563 P.2d 641, 643 (Okla.1977); *See also Enterprise Management Consultants, Inc. v. Oklahoma Tax Commission*, 768 P.2d 359, 362 (Okla.1988) (protesting taxpayer must sustain burden of proving tax assessment was erroneous). Furthermore, error may not be presumed from a silent record, but must be affirmatively demonstrated. *Eckel v. Adair, supra* note 7 at 924. City Vending has not affirmatively demonstrated on this record any of the Tribes or Indians it sold to did not resell at the retail level or that any resales were made to tribal members.

**14.** In that City Vending has failed to show on this record any of its sales were tax exempt we need not determine here *if it had* whether OTC's order of revocation would then be void and subject to collateral attack or whether instead it could merely be considered some type of voidable order subject only to attack on direct appeal because OTC exceeded its jurisdiction by assessing a tax and revoking the license even though some, but not all sales were shown to be tax exempt.

*jurisdiction.* I am writing separately (a) to give prominence to that part of the court's opinion which discusses the consequences of our *Dow Jones'*[1] teaching that an agency is powerless to pass on the constitutionality of a statute, and (b) to emphasize that *an appeal directly from a final agency order is necessary to preserve the aggrieved party's constitutional challenge left unresolved in the process of administrative adjudication.*

I recede from the notion that the Commission order under scrutiny here is *totally free of facial infirmity apparent from the agency proceedings.* In my view an *excessive* exercise of taxing power may be inferred from even a casual inspection of these proceedings. This conclusion flows from the Commission's undifferentiated procedural approach to taxing (at the wholesale transaction level) *all cigarette sales to Indian tribes.* The critical assessment in contest here may well have included some portion attributable to federally exempt intratribal sales. While the face of the Commission's proceedings is far from *simon-pure, the infirmity does not make the critical agency order facially void.* At a maximum, the assessment in question might be viewed as partly *excessive* or im-

*properly burdened* by the possible inclusion of an unauthorized levy component. But even if the agency order could be perceived as an adjudication *in excess* of the Commission's *unquestionable* power to levy a cigarette excise tax,[2] its assessment in contest here is not facially *invalid.* It could hence stand impervious to collateral attack launched by the taxpayer in the district court action for injunctive relief.

I

## FAILURE TO RAISE AN UNRESOLVED CONSTITUTIONAL CHALLENGE BY APPEAL BROUGHT DIRECTLY FROM AN ADVERSE ADMINISTRATIVE DECISION MAKES THE AGENCY ORDER IMPERVIOUS TO A LATER COLLATERAL ATTACK ON CONSTITUTIONAL GROUNDS

*Dow Jones*[3] teaches that constitutional challenges lie outside the adjudicative competence of administrative agencies. Under pre-*Dow Jones* practice, it was clearly understood that on an agency's failure to consider a constitutional challenge, the aggrieved party had to appeal lest the decision become final.[4] *Dow Jones does not*

1. *Dow Jones & Co. v. State ex rel. Tax Com'n,* Okl., 787 P.2d 843 (1990).

2. See 68 O.S.1991 §§ 302, 308(a), and 315, *infra.*
   Section 302 provides in pertinent part:
   "There is hereby levied upon the sale, use, ... possession, or consumption of cigarettes within the State of Oklahoma a tax....  * * *  Such tax shall be evidenced by stamps which shall be furnished by and purchased from the Tax Commission or by an impression ... by the use of a metering device when authorized by the Tax Commission ... and said stamps or impression shall be securely affixed to one end of each package in which cigarettes are contained or from which consumed.
   The *impact of the tax levied* by the provisions of this article *is* hereby declared *to be on the vendee, user, consumer, or possessor* of cigarettes in this state, and, when said tax is paid by any other person, such payment shall be considered as an advance payment and shall thereafter be *added to the price* of the cigarettes and recovered from the ultimate consumer or user. * * *" (Emphasis mine.)
   The pertinent terms of § 308(a) are:
   "* * * The Commission shall be responsible for the custody and sale of the stamps, and

   for the disposition of the proceeds thereof.
   * * *"
   The pertinent terms of § 315 are:
   "*For the purpose of enabling the Oklahoma Tax Commission to determine the tax liability* of a ... wholesale dealer ..., it shall have the right to inspect any premises where cigarettes are ... stored, [or] sold ... and to examine all of the records required herein to be kept...." (Emphasis added.)

3. *Supra* note 1.

4. In *Conoco, Inc. v. State Dept. of Health, Etc.,* Okl., 651 P.2d 125 (1982), the aggrieved party failed to perfect a timely appeal from a final administrative order. It then resorted to the district court for a challenge to the validity of the rule on which the order was rested by invoking declaratory judgment jurisdiction under 75 O.S.1981 § 306. We there stated that "the time limits within which to appeal from an adverse decision are jurisdictional in nature and that if an appeal is brought untimely the court has no power to decide the case. This rule applies to judicial review of administrative actions to the same extent as it does to court judgments and decrees." *Id.* at 128.

*disturb that time-honored rule of practice.*

An agency's want of competence to resolve a constitutional attack does not enable a party aggrieved by its decision to delay the challenge past a timely appeal. One may not *wait beyond an agency order's* finality to assert a claim of constitutional infirmity.

City Vending did not appeal from the Commission's order; rather, it pressed the order's constitutional infirmity as a defense against the district court injunction. Since the assessment in contest is *not facially void*,[5] City Vending's failure timely to appeal makes that agency decision final and the interposed district court defense an impermissible collateral attack.

## II

THE COMMISSION'S UNDIFFERENTIATED PROCEDURAL APPROACH TO TAXING CIGARETTES FOR SALE TO INDIAN TRIBES AT THE WHOLESALE TRANSACTION LEVEL IS AT BEST AN *EXCESS* RATHER THAN *ABSENCE OF* JURISDICTION

The administrative law judge's findings show the contested assessment against City Vending to be for the sale of cigarettes at the wholesale transaction level to "Indians and/or Indian tribes" for "resale" and "consumption within the State" and for "failing to affix thereto cigarette excise tax stamps." City Vending's license was revoked for distributing cigarettes without

the required tax stamp. It is apparent on the face of the Commission proceedings that its procedure *did not distinguish between two distinct taxing categories—the ultimate sales to tribal and nontribal members.* From this undifferentiated procedural approach one could infer an infirmity apparent upon the face of the proceedings. The Commission may have indeed exceeded its taxing power by including in the contested assessment transactions that qualify as federally exempt intratribal sales. But even if intratribal sales were in fact improperly taxed, their inclusion would not create a facial invalidity. *The Commission's exercise of such unauthorized power is, at most, an act in excess but not in the absence of its jurisdiction.*

## A.

### The Distinction Between Excess and Absence of Jurisdiction

The law observes the distinction between *excess* and *absence* of jurisdiction over a given subject matter.[6] In the latter circumstance, judicial power to act at all is simply wanting.[7] For example, if a probate court whose authority is limited to wills and decedents' estates should conduct a criminal trial, its jurisdiction to decide any issue in the case is, without a doubt, entirely absent. On the other hand, when the authority to deal with a subject does exist, the *manner and extent* of the power's exercise, even if patently *excessive*, will stand, absent of course a direct attack.[8] If a court invested with general

---

5. For the concept of "facial invalidity" *see infra* Part II(A).

6. *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351–352, 20 L.Ed. 646, 651 (1872); *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978).

7. *State v. Williams,* 209 Wis. 541, 245 N.W. 663, 665 (1932).

8. The *manner and extent* of an adjudicative authority's exercise are but two factors which are just as appropriate for a tribunal's determination as any other issue in the proceeding. *Bradley v. Fisher, supra* note 6, 80 U.S. (13 Wall.) at

352, 20 L.Ed. at 651; *State v. Williams, supra* note 7 at 665.

The distinction between "excess" and "absence" of judicial jurisdiction is a common-law concept equally applicable to agency cognizance. If the Department of Public Safety were to press before itself, as an adjudicative agency, criminal charges for driving under the influence, the Department's authority to proceed would, without a doubt, be found entirely *wanting*. On the other hand, its authority to revoke a driver's license is statutorily present. The manner and extent of the latter power's exercise would determine whether it was *excessively* applied. Similarly here, the Tax Commission, which is vested with general authority to correct, adjust or

jurisdiction over criminal cases should find some act or omission to be a public offense when by law it clearly is not, or should sentence a defendant to eleven years of imprisonment when the maximum confinement prescribed by statute is only ten, the decision would be *in excess* but not in the *absence of* the court's jurisdiction.[9]

These examples serve to distinguish the *absence* of jurisdiction from its *excess.* Our concern in this case is with the *consequences* flowing from those terms. When a complete *absence* of jurisdiction appears on the face of the judgment roll (or from an inspection of its administrative counterpart—the "agency proceedings"),[10] the court's ruling is, of course, *void* and subject to vacation on direct or collateral attack.[11] The tribunal's decision is deemed void *only* when the *face of the record* reveals that at least one of the three elements of agency jurisdiction was absent, i.e., jurisdiction over the parties, jurisdiction over the subject matter or jurisdiction-al power to pronounce the particular decision that was rendered.[12] In contrast, an *excessive* exercise of cognizance does *not make the decision facially void and vulnerable to collateral attack.*[13] An agency order that is not facially void "is *valid until set aside,* and parties may be precluded from setting it aside by ... waiver, estoppel, or the passage of time."[14] Jurisdiction is not wanting but merely *exceeded* when a statute is misinterpreted or adjudicative authority is exercised erroneously.[15] If extrinsic evidence is needed to show the jurisdiction's absence, the decision is *not* facially invalid.[16] Firmly rooted in our jurisprudence,[17] these distinctions are applied to agency decisions that fall under the adjudicative rubric.[18]

### B.

### The Tax Commission Has Cognizance Of Federal–Law Issues

State courts have the constitutionally invested authority over any federal-law claim

abate an erroneous audit, was acting within its cognizance, although its assessment might be condemned as *excessive.* 68 O.S.1991 § 221(b) and (e).

9. *See Bradley v. Fisher, supra* note 6, 80 U.S. (13 Wall.) at 351, 20 L.Ed. at 651.

10. For an application to agency process of the judgment roll teaching of the common law and of the distinction between excess and absence of cognizance, *see Gulfstream Petroleum Corp. v. Layden,* Okl., 632 P.2d 376, 378 (1981), where the court extended the concept of "facial invalidity" to an administrative order of the Corporation Commission. The *Gulfstream* teaching was followed in *Kaneb Production Co. v. GHK Exploration Co.,* Okl., 769 P.2d 1388, 1392 (1989), and *Mullins v. Ward,* Okl., 712 P.2d 55, 59–60 (1985). The district court's inquiry into the validity of Corporation Commission adjudicative orders stands confined to determining, from an inspection of the face of that agency's proceedings (i.e., the application, the process by which the parties were notified and the Commission's order), if the Commission meets the jurisdictional prerequisites. *Mullins, supra* at 59 n. 7; *Gulfstream, supra* at 379.

11. 12 O.S.1991 § 1038; *Hough v. Hough,* Okl., 772 P.2d 920, 921 (1989); *Mayhue v. Mayhue,* Okl., 706 P.2d 890, 895 (1985); *Scoufos v. Fuller,* Okl., 280 P.2d 720, 723 (1955).

12. *Gulfstream Petroleum Corp. v. Layden,* Okl., *supra* note 10 at 378; *Kaneb Production Co. v.*

*GHK Exploration Co., supra* note 10 at 1392; *Mullins v. Ward, supra* note 10 at 60.

13. *State v. Williams, supra* note 7 at 665; *People v. Ruiz,* 217 Cal.App.3d 574, 265 Cal.Rptr. 886, 892 (Cal.App. 3 Dist.1990).

14. *People v. Ruiz, supra* note 13 265 Cal.Rptr. at 892.

15. Neither legal error nor excess of jurisdiction operates to render a judicial act facially void. *Woodrow v. Ewing,* Okl., 263 P.2d 167, 171 (1953). *See also Schucker v. Rockwood,* 846 F.2d 1202, 1204 (9th Cir.1988); *Robrock v. Robrock,* 105 Ohio App. 25, 5 O.O.2d 315, 151 N.E.2d 234, 239 (1956) (error in a ruling is not synonymous with a decision rendered either in the absence of or in excess of jurisdiction).

16. *Scoufos v. Fuller, supra* note 11 at 721 (the court's syllabus 2); *Hough v. Hough, supra* note 11 at 921.

17. *See Salaney v. Ferris,* 201 Okl. 236, 204 P.2d 270, 273 (1949), where the court held that a judicial act *in excess* of jurisdiction is not *facially* invalid. This principle has been consistently followed in other cases. *See, e.g., Taylor v. Dale,* 201 Okl. 519, 207 P.2d 789, 789–790 (1949); *Allison v. Howell,* 204 Okl. 404, 230 P.2d 706, 709 (1951); *State ex rel. Hunt v. Green,* Okl., 508 P.2d 639, 642 (1973).

18. *See* authorities cited *supra* note 10.

or issue not expressly withheld from their jurisdiction by an act of Congress.[19] Tribal sovereign immunity claims or defenses sought to be based on federal law must yield to this nation's dual sovereignty scheme and its dual court system. *Oklahoma Tax Commission v. Graham;*[20] *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma.*[21] In *Graham* the Court held that a tribal sovereign immunity counterclaim, pressed in a state-court suit to enforce a tax assessment against an Indian tribe for cigarette sales and bingo receipts, is not removable to a federal court. It stands cognizable in a state court. *Citizen Band* teaches that tribal immunity *deprives neither state administrative institutions* of their power to tax tribal sales of goods (cigarettes) to nontribal members *nor state courts* of their authority to enforce the tax through "equitable remedies". There, the Court notes that while the Tribe's sovereign immunity bars the state from pursuing its most effective direct remedy to collect the taxes (a lawsuit against the Tribe), alternative procedural avenues avail. Individual tribal members employed in the Indian smokeshops may not claim tribal immunity. *States are hence free to collect from the wholesalers taxes on unstamped cigarettes supplied to tribal stores.*[22] Oklahoma's own decisional law foreshadowed *Citizen Band.* It had held a Tribe's immunity from taxes not to extend to tribal activities or transactions affecting nontribal members.[23]

While the federal government shares its tax immunity[24] with the Indian tribes (for whose benefit the government holds reservation lands in trust),[25] this immunity does not *ipso facto* extend to private entities doing business with the government.[26] Under the now repudiated "intergovernmental tax immunity doctrine",[27] state government could not tax income that an individual directly derived from any contract with the federal government. Today, unless Congress has expressly or impliedly acted to preempt state taxation, "a State can im-

**19.** *Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820, 821–23, 110 S.Ct. 1566, 1568, 108 L.Ed.2d 834 (1990); *Tafflin v. Levitt,* 493 U.S. 455, 458–49, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 (1990); *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981); *see also McLin v. Trimble,* Okl., 795 P.2d 1035, 1045 (1990) (Opala, V.C.J., dissenting).

**20.** 489 U.S. 838, 840–42, 109 S.Ct. 1519, 1521, 103 L.Ed.2d 924 (1989).

**21.** 498 U.S. ——, ——, 111 S.Ct. 905, 912, 112 L.Ed.2d 1112 (1991).

**22.** *Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma, supra* note 21, 498 U.S. at ——, 111 S.Ct. at 912.

**23.** *State ex rel. May v. Seneca–Cayuga Tribe,* Okl., 711 P.2d 77, 92 (1985).

**24.** Absent express congressional authorization, a state cannot tax the United States directly. *See M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819); *Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163, 175, 109 S.Ct. 1698, 1707, 104 L.Ed.2d 209 (1989). Federal immunity from state taxation is based on the Supremacy Clause of the United States Constitution, Art. 6, cl. 2, U.S. Const. *See South Carolina v. Baker,* 485 U.S. 505, 518 n. 11, 108 S.Ct. 1355, 1364 n. 11, 99 L.Ed.2d 592 (1988); *Massachusetts v. United States,* 435 U.S. 444, 455, 98 S.Ct. 1153, 1161, 55 L.Ed.2d 403 (1978).

**25.** *Cotton Petroleum Corp. v. New Mexico, supra* note 24, 490 U.S. at 175–77, 109 S.Ct. at 1707; *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 764, 105 S.Ct. 2399, 2402, 85 L.Ed.2d 753 (1985).

**26.** *Cotton Petroleum Corp. v. New Mexico, supra* note 24, 490 U.S. at 175–77, 109 S.Ct. at 1707.

**27.** The intergovernmental tax immunity rule was based on the rationale that any tax on income a party received under a government contract was a tax on the contract and thus a tax "on" the government because it burdened the government's power to enter into the contract. *South Carolina v. Baker, supra* note 24, 485 U.S. at 518, 108 S.Ct. at 1363–1364; *Cotton Petroleum Corp. v. New Mexico, supra* note 24, 490 U.S. at 173–77, 109 S.Ct. at 1706–1707. The doctrine of intergovernmental tax immunity reached its zenith in *Gillespie v. Oklahoma,* 257 U.S. 501, 42 S.Ct. 171, 66 L.Ed. 338 (1922), where the Court applied it to invalidate a state tax on income derived by a non-Indian lessee from the sale of his interest in oil produced on Indian land. In *Cotton* the Court observed that after *Gillespie* the doctrine "started a long path in decline and has now been 'thoroughly repudiated' by modern case law." *Cotton Petroleum Corp. v. New Mexico, supra* note 24, 490 U.S. at 174, 109 S.Ct. at 1706, citing *South Carolina v. Baker, supra* note 24, 485 U.S. at 519–520, 108 S.Ct. at 1365.

pose a nondiscriminatory tax on private parties with whom the United States or an Indian tribe does business, *even though the financial burden of the tax may fall on the United States or tribe*".[28] Unless federal legislation were to preempt the levy, the rise of the new doctrine would make a lessee's oil production from Indian land amenable to state taxation.[29]

Had City Vending pressed the Commission with its quest to reduce the assessment to exclude exempt sales and interposed—for reduction of the levy—sales *in intratribal transactions to the ultimate consumer*, the Commission not only would have had cognizance to entertain that federal-law defense, *it would have been its duty to so do*.

## C.

An Agency–Crafted Rule Should Be Adopted For Tracking And Obtaining Credit For Exempt Intratribal Cigarette Sales

### The Tax Payment

Under the statutory taxing regime then (and now) in force licensed wholesalers, jobbers and warehousemen are required to pay a cigarette excise tax on *all* cigarettes that come into their possession for use or consumption in the state. 68 O.S.1991 §§ 302,[30] 305(a).[31] The tax levied "shall be paid [to the Tax Commission] only once on any cigarettes sold ... or consumed...." 68 O.S.1991 § 302.[32] Payment of the excise tax is evidenced by stamps which must be affixed to the cigarette package before it is sold for further distribution. 68 O.S. 1991 §§ 302,[33] 305(a).[34] The licensed wholesaler's *withdrawal of the cigarettes from storage for sale or distribution marks the taxable event.*[35] 68 O.S.1991 § 305(a).[36] A cigarette tax must *be paid in advance on all cigarettes* distributed to Indian tribes. Because the taxable event occurs *before the cigarettes are either sold or distributed,* the state's collection process may easily result in an excessive payment. *The nontribal wholesaler, when statutorily required to affix the stamps, is unable to ascertain in advance whether the ultimate consumer will be a tax-exempt tribal member or a nontribal purchaser.*

### The Tax Burden

The statutory scheme contemplates the tax incidence to be on the consumer. 68

"Every wholesaler ... doing business within this State and required to secure a license ... shall, *upon withdrawal from storage, and before making any sale or distribution for consumption thereof,* cause the same to have affixed thereto the stamp or stamps as required by this Article...." (Emphasis mine.)

**32.** For the pertinent text of 68 O.S.1991 § 302, *see supra* note 2.

**33.** For the pertinent text of 68 O.S.1991 § 302, *see supra* note 2.

**34.** For the pertinent text of 68 O.S.1991 § 305(a), *see supra* note 31.

**35.** Section 305(c) provides that any consumer may purchase unstamped cigarettes directly from the wholesaler if, prior to the purchase, he secures a written license from the Tax Commission and posts a surety bond. After purchase, he must immediately buy stamps from the Commission and affix them to the cigarettes. In that instance, the taxable event occurs when the stamps are affixed to the cigarette packages.

**36.** For the pertinent text of 68 O.S.1991 § 305(a), *see supra* note 31.

**28.** *Cotton Petroleum Corp. v. New Mexico, supra* note 24, 490 U.S. at 175, 109 S.Ct. at 1707 (emphasis mine); *South Carolina v. Baker, supra* note 24, 485 U.S. at 520–523, 108 S.Ct. at 1365–1367.

**29.** *Cotton Petroleum Corp. v. New Mexico, supra* note 24, 490 U.S. at 175–77, 109 S.Ct. at 1707; *South Carolina v. Baker, supra* note 24, 485 U.S. at 518, 108 S.Ct. at 1364–1366. After *Gillespie, supra* note 27, was squarely overruled in *Helvering v. Mountain Producers Corp.,* 303 U.S. 376, 386–387, 58 S.Ct. 623, 627–628, 82 L.Ed. 907 (1938), "oil and gas lessees operating on Indian reservations were subject to nondiscriminatory state taxation as long as *Congress did not act affirmatively to pre-empt the state taxes.*" *Cotton Petroleum Corp. v. New Mexico, supra* note 24, 490 U.S. at 173–75, 109 S.Ct. at 1706 (emphasis added). See also *Apache Gas Products Corp. v. Oklahoma Tax Com'n,* Okl., 509 P.2d 109, 114–115 (1973).

**30.** For the pertinent text of 68 O.S.1991 § 302, *see supra* note 2.

**31.** The terms of 68 O.S.1991 § 305(a) provide in pertinent part:

O.S.1991 § 302.[37] If the levy is paid by anyone else, the remittance is "considered an *advance payment*" which is "added to the price of the cigarettes and recovered from the ultimate consumer or user." 68 O.S.1991 § 302.[38] The cigarette tax—initially paid by the wholesaler when stamps are bought from the Commission—is an "advance payment". The wholesaler adds the tax to the price of the cigarettes supplied to the retailer. The impact of this "pass-through" system ultimately falls upon the consumer of stamped cigarettes. In making retail sales of cigarettes the retailer is required to "show the amount of [pass-through] tax [that has been] paid as evidenced by appropriate stamps on each package of cigarettes sold" and to collect the tax "from the user or consumer". 68 O.S.1991 § 302.[39] In short, by shifting the incidence of the levy onto the ultimate consumer, the assessment regime contemplates tax reimbursement to the wholesaler and retailer. The only instance where the tax burden cannot be passed on is when unstamped cigarettes in the licensed wholesaler's possession are "lost, stolen or unaccounted for, in transit, storage or other-

wise". 68 O.S.1991 § 305(f).[40] Section 305(f), which raises a presumption of use or consumption within the state, makes the wholesaler liable for taxes due on these cigarettes.

*The Tax Exemption*

*By the then-effective statute, only two categories of sales are expressly exempted from tax—those to veteran hospitals or state-operated veteran homes and to the United States.*[41] There is simply *no* provision for wholesale-level exemption for sales made to Indian tribes. Transactions with the tribes are not *per se* exempt *either by state or federal law; only cigarettes which ultimately reach the tribal consumer are exempt from the tax.* The burden of proving intratribal sales and securing for them a tax credit or refund rests on the tax remitter (the cigarette wholesaler).

*A Tax Credit Or Remittitur Procedure For Reimbursement of Cigarette Taxes Paid on Intratribal Cigarette Sales*

Because an excessive payment potential is clearly built into the state's *undifferen-*

**37.** For the pertinent text of 68 O.S.1991 § 302, *see supra* note 2.

**38.** For the pertinent text of 68 O.S.1991 § 302, *see supra* note 2, (emphasis mine).

**39.** For the pertinent text of 68 O.S.1991 § 302, *see supra* note 2, (emphasis mine).

**40.** The terms of 68 O.S.1991 § 305(f) are:

"(f) Any person, including distributing agents, wholesalers, jobbers, carriers, warehousemen, retailers and consumers, having possession of unstamped cigarettes in this State shall be liable for the tax on such cigarettes in case the same are lost, stolen or unaccounted for, in transit, storage or otherwise, and in such event a presumption shall exist for the purposes of taxation, that such cigarettes were used and consumed in Oklahoma."

**41.** The terms of 68 O.S.1991 § 321 are:

"All cigarettes sold to veterans hospitals and state operated domiciliary homes for veterans located in the State of Oklahoma, for distribution or sale to disabled ex-servicemen or disabled ex-servicewomen interned in, or inmates of, such hospitals, or residents of such homes, and all sales to the United States are hereby exempted from the stamp excise tax levied by this Article."

Section 321's amendment in 1992 (Okl.Sess.L., Ch. —— § 16, eff. Jan. 1, 1993) adds two additional exempted categories; the statute now provides:

"The following sales are hereby exempted from the stamp excise tax levied pursuant to the provisions of Section 301 et seq. of this title:

"1. All cigarettes sold to veterans hospitals and state operated domiciliary homes for veterans located in the State of Oklahoma, for distribution or sale to disabled ex-servicemen or disabled ex-servicewomen interned in, or inmates of, such hospitals, or residents of such homes;

2. All sales to the United States;

3. All sales to a federally recognized Indian tribe or nation which has entered into a compact with the State of Oklahoma pursuant to the provisions of subsection C of Section 1 of this act or to a licensee of such a tribe or nation, upon which the payment in lieu of taxes required by the compact has been paid; and

4. All sales to a federally recognized Indian tribe or nation or to a licensee of such a tribe or nation upon which the tax levied pursuant to the provisions of Section 4 of this act has been paid."

The 1992 amendment does not affect my analysis in this writing.

*tiated* cigarette tax collection approach, a fair method should be established for tracking intratribal sales and for allowing either a credit for or a remittitur of tax paid on documented intratribal sales on which excise taxes have been paid. The legislature has amended the statutory regime to provide a more orderly procedure for documenting the federal-law exemption applicable to intratribal sales.[42] Until those changes are effectuated, I would direct the Commission to adopt rules which provide (a) recordkeeping requirements that will enable a wholesaler to verify and document intratribal cigarette sales and (b) a mechanism which would allow wholesalers routinely to submit these intratribal sales records to the Commission for refund or credit.

## D.

The Commission Clearly Has Cognizance To Assess A Cigarette Excise Tax Against A *Nontribal* Wholesaler Who, At The Wholesale Transaction Level, Sells Unstamped Cigarettes To Indian Tribes

Even though the cigarette tax paid by the wholesaler is a "pass-through" levy added to the price of the product sold to the retailer, this alone will not clothe a nontribal wholesaler with immunity from liability for payment on its transactions with Indian tribes. Our statutory scheme[43] for collecting cigarette excise taxes is consistent with the U.S. Supreme Court's pronouncement in *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma.*[44] There, the Court, citing *City Vending of Muskogee v. Oklahoma Tax Com'n,*[45] gave its *impri-*

*matur* to the state's regime of collecting cigarette excise taxes by assessing wholesalers who supply unstamped cigarettes to tribal stores. The scenario in that case is nearly identical to this. The same parties and the same type of tax assessment (a cigarette excise tax) are implicated. While the other dealt with a different issue— federal-court jurisdiction over state tax liability issues under the Bankruptcy Code[46]—the Court's reference to *City Vending* clearly denotes its renewed approval of the statutory assessment process for collecting cigarette excise taxes from wholesalers who distribute unstamped cigarettes to Indian tribes.

## CONCLUSION

A party adversely affected by an agency's want of cognizance to entertain a constitutional attack must *renew* its challenge in an appeal *directly from the agency order* to preserve its fundamental-law objections. Once an administrative order that is not facially void becomes final, it is impervious to collateral attack even on constitutional grounds.

The Commission has the authority to assess cigarette taxes against the wholesalers. The agency also has the general power to adjudicate a taxpayer's protest against the assessment, if the levy is indeed excessive because of improper inclusion of federally exempt intratribal sales. *Failure of the tax authority's order to show on its face that intratribal and nontribal sales were properly segregated or segregable and hence treated distinctly neither makes an assessment facially infirm nor unveils an absence of jurisdiction on the face of the agency proceed-*

---

**42.** The *new statutory regime* is effective January 1, 1993. 68 O.S.Supp.1992 §§ 301, 309, 321, 346–352, 401, 403.1, 413, 419, 424–429, 1355. Indian tribes who have entered into tax compacts with the State will be treated differently from those that have not. As to the latter category, licensed wholesalers will continue to purchase the cigarette tax stamp, affix it to the cigarette packages and pass the tax onto the Indian tribe and ultimately to the consumer. 68 O.S.Supp.1992 § 350. The Indian tribe may then receive a refund from the Commission for

documented sales to its tribal members. 68 O.S.Supp.1992 § 426(b).

**43.** *See supra* Part II(C) for a discussion of the statutory taxing scheme.

**44.** *Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma, supra* note 21, 498 U.S. at ——, 111 S.Ct. at 912.

**45.** 898 F.2d 122 (10th Cir.1990).

**46.** 11 U.S.C. 505.

*ings.* If the Commission did include in its contested assessment some amounts attributable to intratribal sales exempted from taxation by federal law, the exercise of its *unauthorized power* was, at most, an act *in excess* of jurisdiction. In short, the contested assessment is not facially tainted for *want of cognizance.*

Because the agency's assessment is *not facially void,* but at most affected perhaps by an *excessive exercise of taxing power,*[47] it *is now too late* judicially to disturb the challenged order in response to the taxpayer's impermissible collateral attack.

ALMA WILSON, Justice, concurring specially:

I write specially to emphasize the need for the Oklahoma Tax Commission to adopt agency rules for approving cigarette tax credits or refunds based upon claimed exemptions. It is now established that sales of cigarettes by a retailer clothed with the exemption of a federally registered Indian tribe to a member of a federally registered Indian tribe are exempt from the cigarette tax burden. For ease in administration, our cigarette tax scheme requires the wholesalers of cigarettes to pay the cigarette tax to the Commission and then collect the tax from their buyers. This statutory scheme should be administered to preserve the established exemptions. That is, the Commission should provide the cigarette wholesalers with a credit or refund procedure when the tax has been paid on cigarettes sold by a retail "Indian smoke shop" to the ultimate consumer who is a member of a federally registered Indian tribe.

The assessment of cigarette tax, penalties and interest, in this case, is not subject to adjustment to allow credit or refund based on the Indian exemption because of its technical finality. 68 O.S.1981, § 221. However, field audit and assessment should not be the first avenue available for the cigarette wholesalers to claim a credit or refund of tax paid on cigarettes exempted from the tax. The Commission should promulgate rules which adequately detail the method by which a cigarette wholesaler may claim a credit or refund of taxes paid and the evidence necessary to prove the claim.

KAUGER, Justice, dissenting.

City Vending of Muskogee, Inc. (City Vending) argues that the Oklahoma Tax Commission's ruling was void for lack of jurisdiction, and that the unstamped cigarettes sold to Indian Tribes were exempted by virtue of the Commerce Clause of the United States Constitution.[1] The United States Supreme Court in *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* —— U.S. ——, ——, ——, 111 S.Ct. 905, 908, 912, 112 L.Ed.2d 1112, 1118, 1123 (1991), did not address the Commerce Clause; however, it held that under the doctrine of tribal sovereign immunity, the State cannot tax the sale of cigarettes to Indians. It also found that the State can collect taxes on sales to nontribal members.[2]

In *Potawatomi,* the United States Supreme Court offered the Tax Commission suggested alternatives it might pursue to collect the tax from nontribal members. The Court, while recognizing that the most reliable solution was Congressional action, suggested that states might collect sales tax from cigarette wholesalers. The majority opinion is bottomed on the Supreme

---

**47.** *Gulfstream Petroleum Corp. v. Layden, supra* note 10 at 378; *Kaneb Production Co. v. GHK Exploration Co., supra* note 10 at 1392; *Mullins v. Ward, supra* note 10 at 60. Because the common law's facial invalidity limits now govern an agency's exercise of adjudicative process, *I would today, as I believe we must, hold that the distinction between excess and absence of jurisdiction* protects administrative orders from impermissible collateral attacks with the very same force as it does judgments and orders of courts.

**1.** United States Const. art. I, § 8, cl. 3, provides:
"To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;"

**2.** This accords with the recent decision by the 10th Circuit Court of Appeals, *Sac and Fox Nation v. Oklahoma Tax Comm.,* 967 F.2d 1425 (10th Cir.1992).

Court's solution. This might be appropriate relief—had the Oklahoma Legislature so provided. Here, the majority is not writing upon a clean slate. It has, by judicial fiat, amended § 302 apparently because the United States Supreme Court "in an effort to be helpful" offered some gratuitous advice unrelated to the reality of the Oklahoma statutes.

Because the majority has held that we need not address state jurisdiction to tax tribal members, this case turns not on cigarettes, tribal immunity, jurisdiction, or tax stamps; rather, it is a matter of statutory construction. The majority has refused to apply the statutes as written and has decided sua sponte to amend the controlling statute to add the wholesaler to the taxation chain. The Oklahoma statute, 68 O.S. 1991 § 302 provides that:

"... The impact of the tax levied by the provisions of this article is hereby declared to be on the vendee, user, consumer, or possessor of cigarettes in this state, and, when said tax is paid by any other person, such payment shall be considered as an advance payment and shall thereafter be added to the price of the cigarettes and recovered from the ultimate consumer or user.... Every *retailer* who makes sales of cigarettes within this state to persons for use or consumption shall separately show the amount of tax paid as evidenced by appropriate stamps on each package of cigarettes sold, and the tax shall be collected by the retailer from the user or consumer...."

Although the majority opinion fails to mention § 302, it has rewritten it in order to shift the responsibility for payment of cigarette taxes for all the unstamped cigarettes sold to Indian Tribes to the cigarette wholesaler. Instead, with certain exceptions, the majority finds that under 68 O.S. 1991 § 304 and § 305 the wholesaler is responsible for buying and affixing the tax stamps to all cigarettes it sells.[3] Without further statutory analysis of § 302, § 304, § 305, or 68 O.S.1991 § 1356,[4] the majority finds that the wholesaler is responsible for the sales tax because the wholesaler failed to show either any statutory exemption or to identify the Indian tribe's ultimate consumer.

The only exception to the duty to pay taxes by the wholesaler allowed by the majority opinion occurs if the wholesaler can establish an exemption under 68 O.S. 1991 § 310 and § 321.[5] Indian tribes are

---

**3.** Title 68 O.S.1991 § 304 provides in pertinent part:

"Every manufacturer, wholesaler, warehouseman, jobber or distributor of cigarettes in this state, as a condition of carrying on such business, shall annually secure from the Tax Commission a written license, ..."

Title 68 O.S.1991 § 305 provides in pertinent part:

"... (b) Every retailer who has received cigarettes from a manufacturer, wholesaler, ... not required to secure a license as provided for under Section 304 of this Code, or to affix stamps as required under the preceding paragraph, shall, ... affix stamps upon all cigarette packages ...
(c) Any unlicensed consumer who buys direct from any distributor, jobber, manufacturer, warehouseman, or wholesaler, ... any cigarettes in excess of forty (40), at any one time to which are not affixed the stamps required by this Article shall, ... secure from the Tax Commission a written license ... and shall post with the Commission a surety bond ... conditioned that he will comply with the rules and regulations of the Tax Commission and pay all taxes and penalties and affix to all such cigarettes the proper tax stamps as provided by law, ...
(f) Any person, including distributing agents, wholesalers, jobbers, carriers, warehousemen, retailers and consumers, having possession of unstamped cigarettes in this State shall be liable for the tax on such cigarettes in case the same are lost, stolen or unaccounted for, in transit, storage or otherwise, and in such event a presumption shall exist for the purposes of taxation, that such cigarettes were used and consumed in Oklahoma."

**4.** Title 68 O.S.1991 § 1356 provides in pertinent part:

"... There are hereby specifically exempted from the tax levied by this article:
(A) Sale of tangible personal property or services to the United States government or to the State of Oklahoma, any political subdivision of this state, or any agency of a political subdivision of this state; ..."

**5.** Title 68 O.S.1991 § 310 provides in pertinent part:

"(a) Any person who sells cigarettes in interstate commerce shall, after filing proper bond with the Tax Commission, be excused from

not specifically included within either of these statutory exemptions. However, sales to the United States are.

The sales in question were made to three Indian tribes. One of the tribes, the Citizen Band Potawatomi, furnished the wholesaler with a copy of a letter from the Oklahoma Tax Commission which stated:

"In reply to your letter of April 26, 1978, please be advised we recognize the Citizen Band Potawatomi Indians of Oklahoma as being exempt from sales tax on your purchases of tangible personal property under the provisions found in Paragraph (i), Section 1305, Article 13, Title 68, O.S.1971." [6]

Title 68 O.S.1971 § 1305(i) provided that sales to the United States Government, the State, or any of its political subdivisions were exempt from sales tax.[7] Section 1305 has been repealed. Nevertheless, the same exemption is now found in 68 O.S.1991 § 1356.[8] It provides exemptions to the United States government, the state of Oklahoma, its political subdivisions or agencies of those subdivisions. Because the tribe is not an arm of the state, its exemption must be on a footing with the only other sovereign nation listed—the United States.

Section 321 provides that all sales to the United States are exempt from the cigarette stamp excise tax. Because the Tax Commission interpreted United States within the meaning of § 1356 to include Indian Tribes as sovereign nations for the purposes of sales tax exemption, the exemption statute extends to Indian Tribes. The Commission, by continually interpreting "United States" to include Indian Tribes in

§ 1305 and now § 1356, has imparted to this term the character of a term of art. This is particularly evident because it is used in the same statutory setting with the sales tax exemption statute.[9] The long-standing construction given to a statutory provision is given great weight. It cannot be undone by the Commission—Legislative amendment is required to change the long-standing construction.[10]

The concurring in judgment opinion relying principally on § 305 reaches the same result by finding that the wholesaler's withdrawal of the cigarettes with affixed stamps from storage for sale or distribution marks the taxable event. According to this scenario, the removal from storage mandates that the wholesaler collect the tax from the retailer. However, neither § 302 nor § 305 support this position. Section 302 specifically provides that the retailer *shall* collect the tax from the user or consumer. Under § 305, several parties are responsible either for affixing stamps or paying the stamp tax: 1) the wholesaler is required to affix stamps when the cigarettes are removed from storage and is only liable for taxes when the cigarettes are lost, unaccounted for or stolen; 2) a retailer can be responsible for affixing stamps to cigarettes if the cigarettes are purchased from an out-of-state wholesaler who is not required to stamp the cigarettes under Oklahoma law; and 3) an unlicensed consumer is required to pay the stamp tax if it purchases unstamped cigarettes from the wholesaler.

The view expressed by the concurring in judgment opinion is internally inconsistent with § 305 because: 1) an out-of-state

---

affixing stamps to the cigarettes he sells and ships *to a person in some other state....*"
Title 68 O.S.1991 § 321 provides:
"All cigarettes sold to veterans hospitals and state operated domiciliary homes for veterans located in the State of Oklahoma, for distribution or sale to disabled ex-servicemen or disabled ex-servicewomen interned in, or inmates of, such hospitals, or residents of such homes, and all sales to the United States are hereby exempted from the stamp excise tax levied by this article."

**6.** Exhibit A of the Brief of the Appellant dated March 31, 1986.

**7.** Title 68 O.S.Supp.1971 § 1305(i) provides in pertinent part:
"(i) Sales to the United States government, State of Oklahoma, or any of its political subdivisions."

**8.** Title 68 O.S.1991 § 1356 see note 4, supra.

**9.** *Atchison, Topeka and Santa Fe Ry. v. United States,* 209 F.Supp. 35, 42 (N.D.Ill.1962).

**10.** *Oral Roberts Univ. v. Oklahoma Tax Comm'n.,* 714 P.2d 1013, 1016 (Okla.1985).

wholesaler who removed the cigarettes from storage is neither required to stamp the cigarettes nor charge the retailer for the stamp tax because the retailer becomes responsible for affixing the stamps; and 2) the statute specifically states that the unlicensed consumers are responsible for the taxes on unstamped cigarettes. Had the Legislature viewed the taxable event as the moment the cigarettes were removed from storage it would be unnecessary to include provisions for the out-of-state wholesalers—tax stamps would have been required. Even more obvious is that under § 305 the unlicensed consumer pays the stamp tax directly to the Oklahoma Tax Commission. If the taxable event were the removal from storage logic would assume that the wholesaler would be required to collect the tax from the unlicensed consumer.

The goal of statutory construction is to determine the intent of the legislature through the language used.[11] Under § 305(f), the wholesaler is responsible for cigarette taxes only if the unstamped cigarettes are lost, stolen or unaccounted for in transit, storage or otherwise. The cigarettes in question were not lost or stolen. The issue is whether the cigarettes were "accounted for" by the wholesaler. The Superior Court of Connecticut in *Allied Grocers Co-op, Inc. v. Tax Comm'r*, 36 Conn.Supp. 59, 411 A.2d 313, 314 (1979), interpreted a similar statutory provision. The Court using the natural and usual meaning of the word *"unaccounted"* determined that it meant that the distributor would not be able to tell where the cigarettes went for ultimate sale to the consumer. This interpretation is supported by the Committee Comments which accompanied the enactment of subsection (f) of § 305. The Legislature provided in the Comments that the new subsection raised a presumption of consumption within the state and placed the burden on the last person who had the incidents of ownership or possession of the unaccounted-for cigarettes.[12] Under the plain and clear meaning of the statute accompanied by the committee comment discussing subsection (f), it is evident that the Legislature did not intend for the wholesaler to be responsible for cigarettes which are not stolen or lost. City Vending can account for the cigarettes. All were sold to Indian tribes. Here, the last parties having incidents of ownership were the Indian tribes, not City Vending.

Statutes must be construed as a consistent whole in harmony with logic, and every portion or part of a statute should be given effect if possible.[13] We presume that the Legislature does not act in vain.[14] The Legislature stated explicitly in 68 O.S.1991 § 302, that the retailer shall collect the tax from the user or consumer.[15] Under our statutory scheme, the ultimate burden of tax collecting is upon the retailer—not the wholesaler. If the legislative intent were for the wholesaler to collect the tax, the wholesaler would be included in the text of § 302 and it would not explicitly require the retailer to collect the tax. Section 305(f) would not provide an exemption for accounted-for sales. Under this analysis, the wholesaler is not responsible for taxes when it can account for the cigarettes.

**11.** *State ex rel. Macy v. Freeman*, 814 P.2d 147, 153 (Okla.1991); *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n*, 764 P.2d 172, 179 (Okla.1988).

**12.** Title 68 O.S.Supp.1965 § 305, Committee Comments, provides:
"Subsection (f) is new. It raises a presumption of use or consumption within this State of cigarettes lost, stolen or unaccounted for, placing the liability for taxes on such cigarettes upon the person who had the incidents of ownership or possession of the cigarettes at the time lost, stolen or unaccounted for."

**13.** *Cowart v. Piper Aircraft Corp.*, 665 P.2d 315, 317 (Okla.1983).

**14.** *Cooper v. Dix*, 771 P.2d 614, 617 (Okla.1989).

**15.** Title 68 O.S.1991 § 302 provides in pertinent part:
"... Every retailer who makes sales of cigarettes within this state to persons for use or consumption shall separately show the amount of tax paid as evidenced by appropriate stamps on each package of cigarettes sold, and the tax shall be collected by the retailer from the user or consumer. The provisions of this section shall in no way affect the method of collection of such tax on cigarettes as now provided for by existing law...."

Under the majority's opinion, the wholesaler is required to know an Indian tribes' ultimate consumer—Indian or non-Indian— and pay taxes accordingly. There is no provision in the statutes which requires the wholesaler to ascertain the identity of the retailer's ultimate consumer. Assuming arguendo, that this result could be accomplished, it would require a statutory amendment by the Legislature—not by this Court—to reach this result. In fact, the Legislature has enacted legislation, which was signed by the Governor on May 28, 1992, on this very issue. It amends the Act to allow tribes to enter into tax compact agreements with the State and to provide for the wholesaler to be responsible for the cigarette tax on cigarettes sold to tribally owned or licensed stores which are not included in a compact agreement.[16]

The circumlocutionary reasoning in the concurring in judgment opinion will not stand when the new Act is read with the previous statutes. The concurring in judgment acknowledges the new Act; however, it fails to understand the significance of Section 11 of the new act—the provision which places the cigarette tax responsibility on the wholesaler—which would not be necessary if the State could already collect the cigarette tax from the wholesaler. I must dissent from the majority opinion because 68 O.S.1991 § 302 does not place the burden of taxation upon the wholesaler when the cigarettes can be traced to an identifiable purchaser exempt from taxation.

SUMMERS, Justice, with whom KAUGER, Justice joins, Dissenting:

In its final footnote the majority states that we need not determine if the OTC's order is subject to a jurisdictional collateral attack, because no evidence was presented by City Vending to show that sales were made to Indians and Indian tribes. I must disagree. The order of the OTC stated that it was *not disputed* that City Vending sold cigarettes to Indians and/or Indian tribes. This being the case, we are directly confronted with a collateral attack on the jurisdiction of the OTC to tax those sales made to Indians or Indian tribes.

16. Senate Bill 759 (1992) provides in pertinent part:

"SECTION 1. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 346 of Title 68, ...
A. The Legislature finds that:
1. Federal law recognizes the right of Indian tribes and nations to engage in sales of cigarettes and tobacco products to their members free of state taxation;
2. The doctrine of tribal sovereign immunity prohibits the State of Oklahoma from bringing a lawsuit against an Indian tribe or nation to compel the tribe or nation to collect state taxes on sales made in Indian country to either members or nonmembers of the tribe or nation without a waiver of immunity by the tribe or nation or congressional abrogation of the doctrine; and
3. The Supreme Court of the United States, in 'Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma', suggested that a state may provide other methods of collection of state taxes on sales of cigarettes and tobacco products made by Indian tribes or nations to persons who are not members of the tribe or nation, such as entering into mutually satisfactory agreements with Indian tribes or nations....
C. The Governor is authorized by this enactment to enter into cigarette and tobacco products tax compacts on behalf of the State of Oklahoma with the federally recognized Indian tribes or nations of this state.... All sales in Indian country by those compacting tribes or nations and their licensees shall be exempt from the taxes levied pursuant to the provisions of Section 301 et seq., Section 401 et seq. and Section 1350 et seq. of Title 68 of the Oklahoma Statutes and Sections 4 and 9 of this act, ...
SECTION 8. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 424 of Title 68, ...
The provisions of Sections 9 through 12 of this act shall not apply to a federally recognized Indian tribe or nation which has entered into a compact with the State of Oklahoma pursuant to the provisions of subsection C of Section 1 of this act or to a licensee of such a tribe or nation during the period that such compact is effective....
SECTION 11. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 427 of Title 68 ...
Every wholesaler, jobber or warehouseman doing business within this state and required to secure a license as provided in Section 415 of Title 68 of the Oklahoma Statutes may sell tobacco products to tribally owned or licensed stores in this state. It shall be the duty of the wholesaler, jobber or warehouseman to collect, report and remit the tax imposed by Section 10 of this act on the tobacco products inventory sold to a tribally owned or licensed store...."

The Federal Constitution, as interpreted in *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe,* —— U.S. ——, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), forbids a state from taxing the sale of cigarettes made by a tribal smokeshop to an tribal member. Although the OTC is given, by statute, the jurisdiction over collection of taxes, this statutory grant of jurisdiction cannot exceed that which is allowed by the Federal Constitution.

As such, the collateral attack of the OTC's order by City Vending presents a question of federal constitutional jurisdiction and should be addressed by this Court. The OTC lacks jurisdiction to tax the sales of tribal smokeshops to tribal members. *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 157, 100 S.Ct. 2069, 2083, 65 L.Ed.2d 10 (1980). The OTC did not exempt these sales from taxation in its order, but instead lumped the two categories of sales—those to tribal member and those to non-tribal members—into one category and assessed a tax on the entire amount of sales. Because the OTC acted beyond that jurisdiction permitted by the Commerce Clause of the Federal Constitution, its Order is facially void. *See Scoufos v. Fuller,* 280 P.2d 720, 723 (Okla.1955).