ALLIED GROCERS CO-OP, INC. v. TAX COMMISSIONER

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE No. 195739
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed November 14, 1979

*E. F. Raffile, Jr.,* for the plaintiff.

*Carl R. Ajello,* attorney general, and *Ralph G. Murphy* and *Robert L. Klein,* assistant attorneys general, for the defendant.

KLINE, J. On October 5, 1974, the plaintiff was a licensed distributor of cigarettes in the state of Connecticut. On or about that date, a quantity of cigarettes was stolen, of which some were stamped and some were not stamped. The value of the affixed tax stamps was $2646. The 28,428 cartons which were not stamped would have been taxed, if sold in Connecticut, in the amount of $59,698.80. The plaintiff has paid the defendant $62,344.80 plus interest in the amount of $1812.13, for a total of $64,156.93.

For the six month period prior to the theft, the plaintiff shipped 33 percent of its merchandise out of state and 67 percent to points within Connecticut. The plaintiff paid the above tax to the defendant under protest. On March 14, 1975, the plaintiff applied for a refund which was denied by the defendant. From this denial, the plaintiff has appealed.

The plaintiff sets up three grounds for its appeal: (1) that the commissioner's actions were discriminatory and confiscatory; (2) that the tax imposed a burden on interstate commerce in violation of article I, section 8, clause 3 of the United States constitution; and (3) that the cigarettes were held in transit or in storage and were not held for sale at the time of theft.

In its brief, the plaintiff pursues the third defense exclusively and the first two grounds of appeal are, therefore, considered abandoned. The plaintiff concentrates on the theory that since the cigarettes were stolen, they were, in fact, "accounted for" and, therefore, not held for sale within the state of Connecticut. This is a case of first impression in this state, although similar matters have been decided in several sister states.

The plaintiff relies upon General Statutes § 12-316 for his position. The last sentence of the statute provides: "Any person, including distributors, . . . last having possession of unstamped cigarettes in this state shall be liable for the tax on such cigarettes if such cigarettes are unaccounted for in transit, storage or otherwise, and in such event a presumption shall exist for the purpose of taxation that such cigarettes were used and consumed in Connecticut." The plaintiff's position is that the cigarettes were accounted for in that they were known to have been stolen from the plaintiff.

"Unaccounted" is defined in Webster's Third New International Dictionary as "not accounted" or the negative of "accounted," which is the past participle of "account." The word "account" is defined as "to furnish a justifying analysis or a detailed explanation of one's financial credits and debits or of the discharge of any of one's responsibilities . . . to furnish substantial reasons or a convincing explanation . . . to be the sole or primary factor in the existence, acquisition, supply, use, or disposal of an indicated thing."

From the definition of "account," it seems that more must be done than simply to show that the cigarettes were stolen. The definitions seem to indicate that there must be some sort of detailed explanation. If the distributor were able to account for the cigarettes, he would be able to tell where they went for ultimate sale to the consumer. When they are stolen, the distributor does not know where they went, how they left, when they left, or whether they remain salable. There are a number of elements he cannot explain. Without these, he cannot "account" for the cigarettes.

Words in statutes are to be given their natural and usual meaning. General Statutes § 1-1 (a);

*Hope* v. *Cavallo*, 163 Conn. 576; *Hartford Electric Light Co.* v. *Water Resources Commission*, 162 Conn. 89.

Since the distributor is not excused from liability by § 12-316, General Statutes § 12-296 would be the controlling section. Section 12-296, entitled "Imposition of tax," provides: "A tax is imposed on all cigarettes held in this state by any person for sale, said tax to be at the rate of ten and one-half mills for each cigarette and the payment thereof shall be for the account of the purchaser or consumer of such cigarettes and shall be evidenced by the affixing of stamps to the packages containing the cigarettes as provided in this chapter."

This statute reads the same as the statutes in Maine and New York. In New York, the court held: "The sole issue herein is whether petitioner was properly held liable for the tax on . . . stolen cigarettes. The cigarette tax is imposed on 'all cigarettes possessed . . . for sale.' While it is true that the 'ultimate . . . liability for the tax shall be upon the consumer,' the tax is clearly levied at the time the cigarettes are possessed for sale . . . ." *Mandel Tobacco Co.* v. *State Tax Commission*, 58 App. Div. 2d 930. A similar conclusion was reached in *Lewiston-Auburn United Grocers, Inc.* v. *Johnson*, 253 A.2d 338 (Me.). In *Daniels Tobacco Co.* v. *Norberg*, 114 R.I. 502, 506, the court held that "the mere fact that the ultimate burden of a tax is on the consumer does not determine the legal incidence of the tax. . . . [T]he *holding* of cigarettes for sale triggers the tax."

These cases differ from *William Rodman & Sons, Inc.* v. *State Tax Commission*, 373 Mass. 606. In Massachusetts, the excise tax is imposed on cigarettes that are "sold." The tax imposed was a direct tax on the retail customer although

it was collected first at an earlier stage in the distribution process. The plaintiff puts much emphasis on the *Rodman* case, but, as can readily be seen, it is easily distinguishable.

The only other matter in issue is whether the tax should apply to all the cigarettes. In the last six months prior to the theft of the cigarettes, 33 percent were sold out of state and, therefore, were not subject to Connecticut taxes. Historically, the plaintiff sold both in Connecticut and in Massachusetts and New York. The distributor should be given credit for those cigarettes sold out of state. This would rebut the presumption of § 12-316.

The appeal is sustained as to the 33 percent of the cigarettes held to be shipped out of state and $19,700.60 is to be refunded to the plaintiff. As to the rest of the tax, the appeal is overruled.