The STATE of Oklahoma ex rel. Joe B. HUNT, Insurance Commissioner, Petitioner,

v.

The Honorable Robert G. GREEN, Judge of the District Court of Tulsa County, State of Oklahoma, Respondent.

No. 46233.

Supreme Court of Oklahoma.

March 20, 1973.

Paul Ferguson, Oklahoma City, for petitioner.

Rex K. Travis, Oklahoma City, for respondent.

BARNES, Justice:

In this action, Petitioner asks this Court to assume original jurisdiction of Cause No. C–72–2936, now pending before the above named Respondent Judge in the District Court of Tulsa County, and to issue a writ of prohibition directing him to desist and refrain from further proceedings in said cause except as hereinafter indicated.

Said Tulsa County cause is a delinquency proceeding instituted under Title 36 O.S.1971, § 1801ff, by Petitioner, as plaintiff, against Liberty Investors Life Insurance Company, as defendant, sometimes hereinafter referred to merely as "Liberty" and/or "Company", by filing on November 8, 1972, his verified Application for the appointment of a Receiver for Liberty and for a temporary restraining order.

In said Application, Petitioner alleged, among other things, that as of October 31,

1972, Liberty had capital stock of $289,345.00 issued and outstanding, and had additional liabilities of $2,518,273.59, and its net admitted assets totaled the lesser figure of $2,392,603.40, and therefore, according to 36 O.S.1971, § 1801(1), Liberty was impaired and insolvent in the amount of $415,015.19, as shown by a Balance Sheet attached to the Application.

In his said Application, Petitioner prayed for judgment directing Liberty to show cause, if any, why he should not be appointed Liberty's Receiver for rehabilitating or liquidating said Company and for an order restraining it from transacting business and wasting or distributing its property, and for other specific and general equitable relief in accordance with law.

On the same day said Application was filed, the Respondent Judge entered an order restraining Liberty, its officers, directors, agents, etc., from further transacting Liberty's business, except for the payment of its employees' salaries and the claims of Insurance Department examiners, and the receiving of insurance premiums and other funds and depositing them in a separate Company bank account in Tulsa. The order also restrained the waste or disposition of Liberty's property and the destruction or removal of its books, records, and files from its office. The order directed Liberty to appear before Respondent on November 21, 1972, and show cause why Mr. Hunt, Oklahoma's Insurance Commissioner, should not take charge of Liberty's property, conduct its business, ascertain its liabilities, as Receiver without bond, and appoint such assistants, counsel and clerks as he deemed necessary, such persons' compensation and the expenses of the receivership to be fixed by the Receiver, subject to the Court's approval, and paid out of Liberty's funds and assets.

Two days later (November 10th), upon consideration of a motion therefor, previously filed by Liberty, the Respondent Judge entered an order modifying his said previous order in the following respects:

1. By decreeing that the premium due Liberty for its group health insurance coverage of its employees, any Federal Withholding Tax owed by Liberty, and all regular recurring office expenses of Liberty, including postage and the salaries of its office personnel, be paid;

2. By decreeing that certain reinsurance premiums and earned commissions of Liberty's agents, with one exception, be paid;

3. By decreeing that Liberty's Assistant Secretary, Ida Blackburn, establish a separate bank account for Liberty by depositing in a certain Tulsa Bank $10,000.00 of defendant's funds from a premium account to be established by it, from which she was to supervise and administer payment of the aforementioned expenses by checks signed by her and co-signed by one person designated by the applicant and one person designated by defendant;

4. By decreeing how Liberty's certificates of deposit in two certain Tulsa Banks and the interest thereon should be handled in certain particulars by said Banks;

5. By decreeing that all of Liberty's books, records, and documents in the State Insurance Department's possession should be delivered "to this Court, where said books, records, and documents shall remain, pending a final determination of this matter."

Thereafter, nine consecutive hearings, terminating on December 22, 1972, were held before the Respondent Judge. During their course, Petitioner submitted, in support of its Application, evidence that on October 31st Liberty was insolvent in the amount of $408,374.79. Liberty did not refute this, but it apparently obtained the acquiescence of the Court in proceeding with a "plan", outlined in certain Exhibits hereinafter referred to, which it represented, when carried out, would improve its finan-

cial condition and make it solvent. Accordingly, at that last hearing in December (a week before the present original action was filed here), the Respondent Judge, instead of granting or denying Petitioner's Application that a Receiver be appointed for Liberty, merely announced that a Receiver would not be appointed at that "point", and then made the following prospective statement: "The Court will approve the plan which is set out in Exhibit 17, 15, addendums, and the representations made by Mr. Travis." The Respondent Judge then stated that upon the Exhibits and representations being documented and such documents being submitted in proper form and approved by him, he would find Liberty "not impaired" and "make such findings of fact and conclusions of law as are necessary to implement the proposed plan and to carry out the course of action decided upon", and deny Petitioner's Application for the appointment of a Receiver.

■ It is Petitioner's contention that the Respondent Judge, as indicated by his above described conduct, is assuming to place himself in the position of a conservator or receiver to supervise a plan of rehabilitation and reorganization of the insolvent Liberty Company, while he delays or avoids his statutory duty of appointing Mr. Hunt the Company Receiver and allowing him, as such, to initiate measures to guard said Company stockholders and creditors, as well as the public, against loss from the Company's continued illegal operation. Petitioner says that under Title 36 O.S. 1971, § 1803, the Court must either deny or grant the Application, and may not, in lieu of such a ruling or decision, allow the insolvent Company to devise its own plan of rehabilitation and then supervise the carrying out of such plan, as the Respondent Judge is attempting to do.

The portions of Title 36, supra, most pertinent to the issue before us, are as hereinafter quoted:

"§ 1802. * * *

"C. Delinquency proceedings pursuant to this article shall constitute the sole and exclusive method of liquidating, rehabilitating, reorganizing or conserving an insurer. No person other than the Insurance Commissioner, his attorney or the Attorney General representing him, may appear in the courts of this state requesting the appointment of a receiver or otherwise commence such delinquency proceedings to take over, liquidate, rehabilitate, reorganize or conserve an insurer and no court shall entertain a petition for the commencement of such proceedings unless the same has been filed in the name of the state on the relation of the Insurance Commissioner.

"D. An appeal shall lie to the supreme court from an order granting or refusing rehabilitation, liquidation, or conservation, and from every other order in delinquency proceedings having the character of a final order as to the particular portion of the proceedings embraced therein.

"§ 1803. Commencement of delinquency proceedings.—The Insurance Commissioner shall commence any such proceeding, his attorney or the Attorney General representing him, by an application to the court for an order directing the insurer to show cause why the Insurance Commissioner should not have the relief prayed for. On the return of such order to show cause, and after a full hearing, *the court shall either deny the application or grant the application*, together with such other relief as the nature of the case and the interests of policyholders, creditors, stockholders, members, subscribers, or the public may require.

\* \* \* \* \* \*

"§ 1814. Conduct of delinquency proceedings against domestic and alien insurers.—A. Whenever under this article a receiver is to be appointed in delinquency proceedings for a domestic or alien insurer, the court shall appoint the Insurance Commissioner as such receiver. The court shall order the Insurance Commissioner forthwith to take possession of the assets of the insurer and to

administer the same under the orders of the court.

\* \* \* \* \* \*

"F. In connection with delinquency proceedings, the Insurance Commissioner may appoint one or more assistant commissioners to act for him and may employ such counsel, clerks, and assistants as he deems necessary. The compensation of the assistant commissioners, counsel, clerks, or deputies and all expenses of taking possession of the insurer and of conducting the proceedings shall be fixed by the receiver, subject to the approval of the court, and shall be paid out of the funds or assets of the insurer. \* \* \*" (Emphasis added)

As we interpret these statutes, the Court, in this kind of a proceeding, has no prerogative or power to do anything, by way of original action, but deny or grant the Insurance Commissioner's Application. If the Court, or Judge, denies the Application, then he loses jurisdiction of the matter and can do nothing further except take the necessary steps to allow an appeal to this Court from said ruling (as contemplated in Section 1802, subd. D, supra), if such an appeal is desired. If he grants the Application, then under the wording of Section 1803, supra, he may grant "such other relief as the nature of the case and the interests of policyholders . . . (etc.) . . . may require." The Court, or Judge, cannot, as in this case, put off making a ruling on the Insurance Commissioner's Application to allow officers of the insolvent insurer to submit a plan of rehabilitation of their own for his approval, and then determine, on the basis of the plan submitted, whether or not he will grant or deny the Insurance Commissioner's Application. Here, under the wording of Section 1803, the only issue with which the Respondent Judge was correctly confronted, upon presentation of the Petitioner's Application and the evidence concerning the facts therein alleged, was whether or not said Application should be granted or denied.

Where, as here, a Court assumes to act under a statute authorizing a special proceedings, which statute commands him to rule either favorably or unfavorably on a certain issue, the Court's power and jurisdiction is limited by the terms of the statute, and any act done or decision rendered outside of and beyond the limits of the jurisdiction so specifically conferred are in excess of his jurisdiction and are void. In this connection, see Taylor v. Dale, 201 Okl. 519, 207 P.2d 789, and Salaney v. Ferris, 201 Okl. 236, 204 P.2d 270. It is well established that: "Prohibition is a proper remedy to arrest the action of an inferior court where a proper showing has been made that such court is proceeding in a cause without jurisdiction." Gordon v. Followell, Okl., 391 P.2d 242. Such showing concerning the actions of the Respondent Judge has been made here. Accordingly, the Application to assume original jurisdiction and the petition for writ of prohibition heretofore filed herein are both granted; and the Respondent is prohibited from proceeding further in Cause No. C–72–2936, supra, until he has, first and foremost, entered a formal order either granting or denying Petitioner's Application. If he denies it, then he has no further jurisdiction than as herein indicated. If he grants it, then he may enter such further orders as are necessary to allow the Petitioner to function as is contemplated in such cases by this State's so-called "delinquency" statutes. And our decision herein should not be construed to mean that, under Section 1803, supra, and Section 1810 (of the same Title), the Court may not, in entering such orders, and in the exercise of judicial discretion, direct the Commissioner to cooperate with the officers and directors of Liberty in carrying out a plan of rehabilitation, which they have submitted, or may submit, for the Court's approval.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, BERRY, LAVENDER, SIMMS, and DOOLIN, JJ., concur.