**STATE of Oklahoma, ex rel. John P. CRAWFORD, Insurance Commissioner, Plaintiff/Appellee,**

v.

**INDEMNITY UNDERWRITERS INSURANCE COMPANY, a licensed domestic insurer in the State of Oklahoma, Defendant/Appellee,**

v.

**Erica MARSHALL, Appellant.**

No. 86688.

Court of Civil Appeals of Oklahoma, Division No. 1.

June 17, 1997.

As Corrected July 3, 1997.

---

Cheryl P. Hunter, Patricia D. Horn, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, for Plaintiff/Appellee John P. Crawford, Insurance Commissioner.

Orval E. Jones, General Counsel, James L. Chastain, II, Assistant General Counsel, Oklahoma City, for Oklahoma Insurance Department, Plaintiff/Appellee.

Roy H. Maughan, Jr., pro hac vice, Maughan, Atkinson and Martin, Ltd., Baton Rouge, LA, and Marilyn D. Barringer, Oklahoma City, for Defendant/Appellant.

## OPINION

BUETTNER, Judge:

¶1 Appellant Erica Marshall (Mrs. Marshall) married Michael Marshall (Marshall) in June 1991. They established their residence in Zachary, Louisiana. About March 23, 1992, Marshall asked a friend, Mildred Berry Gibbs, to rent a car for him so he could attend truck driving school. She agreed to do so. The car rental contract shows that Mrs. Gibbs and Marshall were the only authorized drivers.

¶2 Marshall and two friends, Donald Lane and Isaac Gilmore, left Baton Rouge between 5:30 and 6 p.m. March 28, 1992 for Mississippi, where they visited Marshall's grandmother. Before returning to Louisiana, the men apparently stopped at a club where they drank some beer. The three left the club in the early morning hours of March 29, with Lane driving the rental car back to Baton Rouge. During the return trip on March 29, 1992, Marshall sustained fatal injuries as a result of a one-car wreck.[1]

¶3 The rental car was insured by Allstate Insurance Company. Marshall had a liability policy on his Peterbilt tractor with

---

1. He died April 3, 1992.

Indemnity Underwriters Insurance Company (Indemnity). Mrs. Marshall filed a wrongful death lawsuit in the Parish of East Baton Rouge, naming Donald Lane, Allstate, Indemnity, and Empire Fire and Marine as defendants. After the lawsuit was filed, Indemnity was placed in receivership in Oklahoma, and Appellee was appointed receiver (Receiver). The District Court of Oklahoma County issued an order staying all proceedings by Indemnity. As a result, the Louisiana court also issued a stay of proceedings in the wrongful death lawsuit filed in Louisiana.

¶4 Pursuant to the Uniform Insurers Liquidation Act, 36 O.S.1991 § 1901 et seq., Mrs. Marshall filed her proof of claim with the Receiver in the amount of $500,000.00.[2] The Receiver recommended disallowing Mrs. Marshall's claim.

¶5 Mrs. Marshall filed her objection, with legal brief and supporting documents, in the District Court of Oklahoma County. She supported her objection with several documents including portions of the depositions of Donald Lane and Mildred Gibbs, affidavits of Isaac Gilmore and herself, and Donald Lane's medical records for the emergency room treatment after the wreck. The Receiver responded to the objection and attached documents, including the incident report; deposition testimony of Mildred Gibbs; Gibbs' affidavit; a copy of the Louisiana wrongful death petition; a copy of the rental car agreement; a copy of the Louisiana judgment dismissing Indemnity from the lawsuit as to the uninsured motorist claim; and a copy of the liability insurance policy issued by Indemnity covering Marshall's Peterbilt tractor.

¶6 Mrs. Marshall contended in her objection that (1) the Receiver erred in failing to determine that the automobile being driven by Lane at the time of the accident was a temporary substitute automobile (for the Peterbilt tractor) as defined by the Indemnity policy; (2) the Receiver erred in failing to determine that Lane's use of Marshall's alleged temporary substitute vehicle was within the scope of permission granted by Marshall; and (3) the Receiver erred in failing to determine that Marshall's survivors or heirs are entitled to recover under the Indemnity policy because Lane was an omnibus insured under the policy. Based on the documents received and the legal arguments set forth in the parties' briefs, the court overruled Mrs. Marshall's objection and approved the Receiver's recommendation.

¶7 On appeal, Mrs. Marshall re-urges her three contentions presented to the District Court and further argues that she was denied due process of law by a claims procedure that adjudicated her unliquidated claim while she was enjoined from discovery of information to prove her claim and by denying her the opportunity to conduct discovery and present supporting documents.[3]

## A. STANDARD OF REVIEW.

¶8 Proceedings under the Uniform Insurers Liquidation Act are special proceedings, *State ex rel. Hunt v. Green,* 508 P.2d 639, 642 (Okla.1973), in the nature of equity. "In cases of equitable cognizance [the appellate court] will examine the record and weigh the evidence, but will not disturb the trial court's judgment unless against the clear weight of the evidence or contrary to law or established principles of equity." *Wetsel v. Johnson,* 468 P.2d 479, 481 (Okla.1970).

## B. DUE PROCESS.

¶9 We first address Mrs. Marshall's lack

---

2. 36 O.S.1991 § 1918 provides that the proof of claim filed with the receiver must be verified and supported by documents material to the claim. The receiver then makes his recommendation to the court. After receiving the recommendation, the court fixes a time for hearing the claim and directs that notice of the time and place of the hearing of the claim be given to interested persons. Interested persons are entitled to appear at the hearing after which the court enters an order allowing, allowing in part, or disallowing the claim. The court's order disposing of the claim is an appealable order.

3. The record shows that the District Court of Oklahoma County issued a temporary injunction in which it enjoined, among other things, interested persons from prosecuting judicial actions. Because Louisiana is a reciprocal state, it stayed the wrongful death lawsuit.

of due process assertions.[4] She claims that the stay order precluded her from deposing the other passenger, the investigating officers and the doctors who treated her husband. She also states that she was unable to complete discovery pertinent to the issue of coverage under Louisiana law and liability and survival damages under Mississippi law.[5]

¶ 10 A party may waive the right to assert error relating to discovery. For instance, in Indiana it is established that "the proper remedy for a party who has been denied the benefits of the discovery process is to seek a continuance." *Bay v. Barenie*, 421 N.E.2d 6, 9 (Ind.Ct.App.1981). In the case at bar, Mrs. Marshall attached depositions, affidavits and other documents in support of her case. She made no complaint to the District Court of an inability to procure sufficient evidence to support her objection. The record does not reveal that she made an application to lift the stay in either court for the purpose of obtaining additional discovery.

¶ 11 Further, she has failed to show any prejudice to her case. The questions addressed by the parties were whether the rental car was covered by Indemnity, that is, whether Lane was an authorized driver, and whether the rental car was a valid substitute vehicle for Marshall's tractor insured by Indemnity. Mrs. Marshall failed to demonstrate what additional discovery was available and how additional discovery may have assisted her in addressing those issues. Nor did Mrs. Marshall show that she attempted to obtain evidence outside the formal discovery process or that such efforts were thwarted by the stays of proceedings.

¶ 12 Finally, we look at the due process question in the context of the liquidation proceeding. "The essential elements of 'due process,' as presently understood and applied, require only that a defendant be given notice and opportunity to be heard in an orderly manner in a proper forum." *Simms v. Hobbs*, 411 P.2d 503, 510 (Okla.1966). See also *Cate v. Archon Oil Co., Inc.*, 695 P.2d 1352, 1356 (Okla.1985) and *Jackson v. Independent School Dist. No. 16*, 648 P.2d 26, 30 (Okla.1982). The special proceeding complies with due process of law. Interested persons, including Marshall, timely received specific instructions from the court as well as from the Receiver, concerning when, where, and how to file their objections. Paragraph 7 of the Order Further Defining Claims Allowance Process states:

> In the Objection, the objecting party must specifically state all grounds relied upon in disagreeing with the Receiver's claim recommendation, including any jurisdictional or notice-related ground. Objections shall be accompanied by a concise brief containing a written statement of material facts as to which the movant contends no genuine issue exists and shall be verified by a person with knowledge of the facts. Reference shall be made to the supporting documentation which the objecting party submitted to the Receiver with a proof of claim. The objecting party shall also reference applicable authority supporting the Objection.

These specific instructions for the special proceeding adequately implement the authorizing law. 36 O.S.1991 § 1918. The claims allowance procedure complies with the requirements of due process of law.

## C. *TEMPORARY SUBSTITUTE VEHICLE.*

¶ 13 Next, we turn to the assertions that the findings of fact were erroneous. Was the rental car used as a temporary substitute for Marshall's insured vehicle, a tractor for a semi-trailer rig? The policy states, at Section VII, "ADDITIONAL DEFINITIONS":

> "temporary substitute automobile" means an automobile not owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an

---

4. U.S. CONST. amend. XIV; Okla. CONST. art. 2, § 7.

5. Mrs. Marshall's complaint that the reason for the Receiver's negative recommendation was because she failed to submit any documents with her proof of claim is not relevant to the case. The District Court, which reviewed the Receiver's recommendation, made its determination based on the evidence submitted by Mrs. Marshall and the Receiver.

**owned automobile** when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction.

Mrs. Marshall argues that it is not necessary that the rental car be used as a dump truck (or tractor) because, she contends, the policy only requires that the substitute vehicle be an automobile within the policy definition. Mrs. Marshall presented an affidavit that the Peterbilt tractor was in the shop. However, there was no evidence that the tractor would have been used for the trip in question. The Fifth Circuit Court of Appeals held that to show temporary use of a substitute, there should be evidence that, but for the breakdown, the insured vehicle would have been in use at the time and in the circumstances involved. *Western Casualty & Surety Co. v. Norman,* 197 F.2d 67, 69 (5th Cir.1952).

¶ 14 This view has been followed by the Louisiana Court of Appeals in *Little v. Safeguard Insurance Company,* 137 So.2d 415, 420 (La.App.1962) (*cert. denied* ) (citing the *Western Casualty* case with approval). The question, as posed by the court, was whether the insured vehicle would have been used for the trip in question had it not been disabled. There was evidence in the instant case that Marshall also owned a Buick that was also broken down. The trial court was authorized to determine that the rental car was a substitute for the Buick, not the Peterbilt, especially where there was a lack of evidence on whether the Peterbilt would have been used for such a trip.

¶ 15 Oklahoma and Louisiana agree that absent an ambiguity, the insurance contract should be interpreted by the plain meaning of the language.[6] *Littlefield v. State Farm Fire and Casualty Co.,* 1993 OK 102, 857 P.2d 65, 69.

¶ 16 Because we find that the trial court's decision was not against the weight of the evidence as to the initial question of policy coverage, we need not address whether Lane, the driver of the rental car at the time of the wreck, was a permitted driver of the substitute automobile, and was, therefore, an omnibus insured under the policy.

¶ 17 For these reasons, we affirm the order of the District Court which disallowed Mrs. Marshall's claim.

AFFIRMED.

HANSEN, P.J., and JONES, J., concur.

---

6. In *Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company,* 630 So.2d 759, 763 (La.1994), the court stated: "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." [citations omitted] "The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. [citations omitted] The parties' intent as reflected by the words in the policy determine the extent of coverage. [citations omitted] Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. [citations omitted] An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. [citations omitted] Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume."